CASE 101.—ACTION BY J. G. ROLLINS AGAINST THE LOUIS-
VILLE TIMES CO.—February 23, 1906.

## Rollins v. Louisville Times Company, &c.

Appeal from Bell Circuit Court.

Judgment for defendant and plaintiff appeals.—
Affirmed.

1. Libel—Justification—Truth of Publication.—In a civil action
for libel, the substantial truth of the publication is a com-
plete defense.

2. Same—Petition—Allegation Showing Truth of Publication—
Effect.—A petition for libel, based on the falsity of a publi-
cation that plaintiff, who had been indicted for crime, had
"left the county and his friends were unable to locate him,"
which alleged that the statement was false, "that a number
of his friends then knew of his whereabouts," that he had
been summoned as a witness in another county, and that on
the day after the publication he returned home, showed the
substantial truth of the statement, for it showed that he had
left the county and that some of his friends were ignorant
of his whereabouts, and it was bad on demurrer.

3. Same—Truth as a Defense—Manner of Pleading.—The rule
that the truth of a libel must be pleaded as a defense does
not apply, where the petition shows that to be true which
would be a good defense, and a demurrer reaches the de-
fect.

E. N. INGRAM and A. G. PATTERSON for appellant.

SAMPSON & SAMPSON and BENNETT H. YOUNG for ap-
pellees.

OPINION OF THE COURT BY JUDGE BARKER—Affirm-
ing.

The appellant, J. C. Rollins, instituted this action
in the Bell Circuit Court, against the appellee, The

Louisville Times Company, to recover damages in the sum of ten thousand dollars said to have been sustained by him as the result of an alleged libelous part of the following publication:

"Bell County Grand Jury Returns Indictments. Hunter-Edwards Fight is Carrying Some of the Factionists Toward the Criminal Court."

"Special to The Times.

"Pineville, Ky., Oct. 17.—The grand jury returned indictments this morning against United States Commissioner J. C. Rollins, charging him with forging certificates of election from Excelsior precinct, Bell county, during the Hunter-Edwards primary, August 9. Rollins is alleged to have put the figure "five" before "twenty-six," making 526 for Hunter and six for Edwards. He has left the county and his friends are unable to locate him.

"Two indictments were returned against John Landon, of Mingo, Tenn., on a charge of stuffing the ballot box in the same precinct and interfering with officers in the discharge of their election duties, and against Grant Brown, Ike Turner, C. C. Thompson, Richard Johnson and C. D. Ball, members of the County Committee, for alleged failure to count the vote of the primary of August 15. All are Hunter men. Chairman W. W. Byrley, of the District Committee, was before the grand jury this morning. More indictments are expected. Feeling is high. Stone is likely to carry the county. The Hunter men are for him."

The petition alleged that the appellee was engaged in the business of publishing a newspaper called The Louisville Times; that on the 17th day of October, 1904, the foregoing article appeared in its columns, and was circulated throughout the country. The only

part of the publication complained of, or which is alleged to be libelous in this: "He has left the county and his friends are unable to locate him." These words are alleged to be false, and their publication, malicious. Subsequently an amended petition was filed, in which it is charged that the correspondent of the appellee, one White Moss, who is denominated an "ardent henchman and supporter of D. C. Edwards," a candidate for the Republican nomination, for Congress in the eleventh district of Kentucky, conspired with the appellee to injure the appellant, a supporter of W. Godfrey Hunter, the opposing candidate for the nomination for that office; and that the publication complained of was composed, written and published for the purpose of injuring the appellant because of his fidelity to the interest of Hunter. Afterwards, a second amended petition was filed, which contained, among other things, the following allegation:

"That at the time of the publication of the article complained of, on October 17th, 1904, that the plaintiff's friends in Bell county, or elsewhere, were not able to locate him was untrue, but he says that a number of his friends then knew of his whereabouts, and that he had been duly and legally summoned by the sheriff of Bell county to appear as a witness in the Marion circuit court, for the defendant in an action, then pending in said Marion circuit court, wherein T. F. Cleaver was plaintiff and the Louisville and Nashville Railroad Company was defendant, on the 14th day of October, 1904; that this plaintiff obeyed said subpoena, and, on the 17th day of October, 1904, testified as a witness for the defendant in said case at Lebanon, Kentucky, and on the 18th day of October, 1904, the day after the said article was pub-

lished by the defendant, The Louisville Times Company, this plaintiff returned to his home in Pineville, Kentucky.''

We have not undertaken to set forth with particularity the allegations of the petition and the amendments, which were voluminous, and made up in large part of charges of a conspiracy between Judge M. J. Moss and White Moss, his son, and the appellee company, to defame appellant, accompanied by statements in the way of innuendo and of special damages. To the petition as thus amended, the appellee interposed a general demurrer, which was sustained by the court, and the appellant declining to amend further, the pleading was dismissed, from which judgment he has appealed to this court.

As said before, the only part of the publication alleged in the original petition to be false, or which is complained of therein, is: ''He has left the county and his friends are unable to locate him.'' By the second amendment of the petition it will be observed that it is specially pleaded that, at the time of the publication, the appellant had left the county, going, as he said, in obedience to a subpoena to testify as a witness in a case pending in the Marion circuit court. It is also specially pleaded that ''a number of his friends then knew of his whereabouts.'' Under the well-known rule, that a pleading is always to be construed most strongly against the pleader, it results that all of the publication concerning appellant is true, except this, that all of his friends were not unable to locate him, but, on the contrary, a number of them knew of his whereabouts. The rule is well-settled, that, in a civil action for libel, the substantial truth of the publication is a complete defense.

In the case of Vance v. Louisville Courier-Journal
Co., 95 Ky. 41, an instruction which told the jury that
if they believed the statements contained in the pub-
lication were substantially true as published, they
should find for the defendant, was approved as a cor-
rect exposition of the law on that subject. The same
principle was enunciated in the case of Ratcliffe v.
Louisville Courier-Journal Co., 99 Ky., 416. And in
the case of Malone v. Carrico, 16 Ky. Law Rep., 155,
the following extract from Townsend on Libel and
Slander (p. 306) was approved: "It is now almost
universally conceded that to show the truth of the
matter of the publication is a complete defense,
either of libel or slander, a publication of the truth
is, as to a civil action, absolutely privileged." Cooley
on Torts, 207; Am. & Eng. Enc. of Law, 2nd ed., vol.
18, p. 1067.

It thus appearing from appellant's petition, that
all of the publication concerning his being indicted,
was absolutely true in fact, except that all of his
friends were not unable to locate him, but that some of
them knew where he was at the time of the publica-
tion, what is there left upon which he can base his
right to recover of the appellee? He was a public
officer, and had been indicted by the grand jury in the
county of his residence, charged with a grave infrac-
tion of the election law. It was a matter of great
public interest, and, therefore, eminently suited for
publication. Is it possible that, on such an occasion,
the newspaper is to be held to the exact facts—to
the most minute details of the transaction? We think
not. All that the law requires is that the publication
shall be substantially true. Appellant, himself, shows
that it was almost literally true; certainly true in its

essential parts. It was his misfortune that he was called to Lebanon to testify as a witness at the very time this grave charge was brought against him by the grand jury at his home; but it is none the less true, that he had left the county, and while it is true that some of his friends were "able to locate him," it is also literally true that some of them were ignorant of his whereabouts. This is a fair construction of his own pleading, and as his own statement thus shows the substantial truth of the publication, he can not complain of it. Ordinarily, the truth of an alleged libel must be pleaded as a defense; but that rule can only apply when there is a necessity for such a plea. If the petition shows that to be true which would be a good defense on plea, the latter becomes unnecessary, and a demurrer exposes the infirmity of the petition. No one can be heard to complain in a civil action, that the truth was published of him.

This statement of the law contains no reflection upon the appellant, and intimates no opinion of ours as to the merits of the criminal proceeding pending against him. The law presumes he is innocent until his guilt is proved in a proper forum, and that presumption we freely concede to him. But we are not disposed to stretch the law in order to restrain the public press in the ligitimate prosecution of its business of conveying the news. We confidently believe the trend of the best modern thought is in the opposite direction. An independent press does more day by day to crush out crime and restrain criminals than all of the organized and paid constabulary of the State; the searchlight of its investigation into the conduct of public officials is more dreaded by the corrupt and the vicious than all of the sanctions of the

penal law; and as an upbuilder and sustainer of an enlightened public opinion it constitutes a large part of the foundation of civil liberty. Those whose faith is sufficiently optimistic to indulge a hope for the permanency of our institutions and civilization must rest it in large part, at least, upon a confidence in the quickening influence of an untrammeled press upon the public conscience.

Judgment affirmed.