### State Journal Company v. Redding.

(Decided May 1, 1917.)

## Appeal from Franklin Circuit Court.

1. Libel and Slander—Truth of Publication in General.—In an action for libel a newspaper is not to be held to the exact facts nor to the most minute details of the transaction contained in the publication complained of. What the law requires is that the publication should be substantially true, the truth in such cases constituting a complete defense, although the publication be inspired by malice, or, if false, would be libelous per se.

2. Libel and Slander—Truth as Justification in General.—Where the publication in question goes no further than to state the facts of the occurrence or transaction and the facts as stated are proved to be, in substance, true, no ground will be given for the recovery of damages by one who thinks himself aggrieved or injured by such publication.

3. Libel and Slander—Truth as Justification in General.—Where the publication complained of is published in good faith and with a belief that it was true and the evidence shows it to be substantially true, the defense is complete and the defendant entitled to a peremptory instruction.

SCOTT & HAMILTON for appellant.

BROWN & NUCKOLS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Reversing.

This appeal brings to us for review a judgment of the Franklin circuit court upon a verdict awarding the appellee, Lee Redding, $400.00 damages against the ap-

pellant, State Journal Company, a corporation, for an alleged libel published of and concerning him in its daily newspaper styled "The State Journal." The alleged libelous matter consisted of two publications, each set out in a separate paragraph of the petition. The first, appearing December 28th, 1914, was as follows:

"WARRANT FOR LEE REDDING CHARGES HIM WITH THEFT.

"A warrant charging Lee Redding with disorderly conduct was sworn out yesterday afternoon, following his dismissal on a similar charge by Acting Judge Elwood Hamilton, on the statement of Patrolman Mart Ellis that he did not wish to prosecute the case against Redding, who is accused of having entered the State Journal office, and stolen a copy of Senate Journal. Redding was under the influence of intoxicants when the theft was committed, and was arrested and the book taken away from him by an employee of the State Journal a few minutes after he left the building.

"The theft occurred about midnight Saturday. Redding, who formerly was employed at the office of the State Journal, was seen to enter the office, go into the job printing department, and leave with something concealed under his overcoat. He was followed to Ann Street and Broadway, where the book was taken from him, and he was locked up in the workhouse.

"Acting Judge Hamilton declared yesterday afternoon that Patrolman Mart Ellis had authorized him to dismiss the charge against Redding. Patrolman Ellis' only part in the affair was the fact that he was on duty at the Police Headquarters at the time, and together with Patrolman Montgomery accompanied the accused to the workhouse. The case was not called in the police court, although witnesses who saw Redding take the book were on hand to testify.

"The status of the case was not divulged until at the conclusion of police court, Acting Judge Hamilton announced that he had dismissed the charge on the authority of a policeman, Mart Ellis.

"Judge Hamilton promptly issued a warrant charging disorderly conduct, when he learned that Patrolman Ellis had no authority to order the man's dismissal, and knew nothing of the affair, other than the fact that he took the prisoner to the workhouse."

The second publication, which appeared January 1st, 1915, was as follows:

"REDDING FREE IN COUNTY COURT; MARSHALL ASKS
FOR DISMISSAL.

"Lee Redding, a former employee of the State Journal, was dismissed by County Judge R. C. Hieatt, after a hearing in the county court yesterday, on a warrant charging him with petit larceny as the result of his having taken a book from the office of the State Journal last Saturday night.

"One witness testified, that he saw Redding enter the office and leave with the book concealed under his raincoat. Two others testified, that they effected the capture of the defendant at Ann Street and Broadway, a short time later, and took the book from him. His arrest followed.

"Redding admitted taking the book but declared he had done so through a mistake, and justified his action in entering the office and taking the property by the fact that he had on previous occasions been given left-over books by Tom Marcum, a foreman in the office of the State Journal. He admitted that the book found on him was not given to him. Marcum testified that he had at times previous given employees left-over books. He denied ever having given Redding a copy of the Senate Journal, the book found on him. Redding has not been employed by the State Journal for two months. He said he was looking for an apron, and a pair of old shoes, when he entered the office.

"A warrant in the police court, charging Redding with disorderly conduct, as the result of the escapade, will be called for trial tomorrow afternoon at two o'clock.

"County Attorney Wiley C. Marshall refused to prosecute the case against Redding, declaring that before the trial he would move to have the case dismissed, despite the insistence of the prosecution, declaring that his investigation had satisfied him that no criminal intent was apparent.

"All effort to persuade the county attorney to try the case was futile, despite the statement of Redding that he did enter the office of the State Journal and take the book, and the statements of three witnesses for the Commonwealth that he was seen to leave the office with the book concealed under his coat and was found with it in his possession.

"County Attorney Marshall insisted upon a dismissal of the case without hearing, but on the objection of Attorney Elwood Hamilton, for the State Journal Company, Judge Hieatt consented to hear the testimony. At the conclusion of the case, Judge Hieatt said:

" 'It looks like the boy was drinking and made a mistake. The book he took might have been of value to a newspaper, but was of no value to the accused. I was inclined to favor the idea of the prosecuting attorney, before the trial, but was willing to hear the evidence. Let the warrant be dismissed.'

"County Attorney Marshall announced yesterday that it was his duty to represent the accused as well as the Commonwealth, when an investigation convinced him that a conviction was not likely."

It was, in substance, alleged in the petition that the above publications not only appeared in the appellant's newspaper, the State Journal, but that they were widely read where the newspaper was circulated, in Franklin county, various other counties in the state and many places outside of the state; that the statements contained in each of the publications were false and libelous and were wilfully and maliciously published with the intent to injure appellee's reputation, and did, in fact, have that effect, greatly to his humiliation and damage.

The appellant's answer admitted the publication of the articles in question but denied their falsity; that they were maliciously published, or that appellee was damaged thereby; and alleged the truth of the articles and that they were published for the purpose of giving to the public, through its newspaper, a truthful account of the facts leading to appellee's arrest and the proceedings in the Frankfort police court and before R. C. Hieatt, Judge of the Franklin county court, with respect to his trial in both those courts.

One of the grounds urged by appellant for a reversal of the judgment is that the trial court erred in refusing a peremptory instruction directing a verdict in its behalf, which instruction was asked by it at the conclusion of all the evidence. If this contention is sustained, consideration of the other grounds relied on for the reversal will be unnecessary.

In order to properly determine the contention mentioned, consideration of the evidence will be required.

Viewing first the testimony of the appellee, it, in substance, shows that he and a companion, Hall, on the night in question went at a late hour to appellant's newspaper and printing plant on the invitation of two of its employees, Saunders and Zimmerman, given earlier in the evening, for the purpose of showing Hall the plant. After looking over it for a while appellee and Hall concluded to leave and in doing so, the former took from a table, where such books were constantly kept and many of them were then lying, a book which had been printed and bound in the building and belonged to appellant, entitled "Senate Journal, 1914." This book he placed under the raincoat he was wearing and carried with him in that way from the building, going out by way of the main office, where Carroll Speer, an employee of appellant, was in charge in the temporary absence of Roger Burlingame, its manager of the night force in the building. Appellee had formerly been in the employ of appellant but had quit or been discharged from its service two months previous to the night in question. He attempted to justify his taking of the Senate Journal upon the ground that he thought it was an unsalable copy of the Acts of the Legislature of 1914, and that Marcum, appellant's foreman, had, while he was in appellant's service, permitted him and other employees of the establishment to appropriate defective and unsalable books containing the acts of the legislature. He admitted, however, that neither he nor the other employees had been given permission by Marcum to take Senate Journals from the office. After he, in company with Hall, had gotten out of the building and on the street, appellee having the Senate Journal under his raincoat, one Busam, an employee in the building, who had seen appellee put the book under his raincoat, went into the office and informed Speer of that fact. Whereupon, the latter went out, found Burlingame on the street and reported the matter to him. Upon receiving the information, Burlingame and Speer started out in pursuit of appellee and Hall, whom they overtook at the corner of Ann and Broadway Streets, two or three squares from the printing plant. When they caught up with them Burlingame seized appellee by the collar, took from him the book, which fell from appellee's person to the pavement, and taking appellee to police headquarters, delivered him to an officer present to be placed under arrest. The forego-

ing facts, except those showing what occurred between the time of appellee's leaving the printing plant and the time of his arrest, were shown on the trial of this case by his testimony alone. Hall, who by running away at the time of appellee's capture by Burlingame and Speer made his escape, did not appear at the trial and was not introduced as a witness. Appellee admitted that he did not have the consent that night of any employee of appellant to take a book from the printing plant, but claimed that the Senate Journal and Acts were so nearly identical in appearance as to make it impossible to distinguish them without close inspection. It was also admitted by appellee and abundantly shown by other evidence in the case that both he and Hall were intoxicated that night.

The evidence introduced in behalf of appellant, furnished by the testimony of Burlingame, Speer, Busam and others, proving the facts and circumstances attending the taking of the Senate Journal by appellee, its concealment under his overcoat, the haste with which he and Hall moved after leaving the printing plant, their refusal to heed the calls of Burlingame to stop before the arrest of appellee, strongly conduced to prove that the taking of the book by him was not a mistake, but intentional and for the purpose on his part of appropriating it to his own use, for a purpose undisclosed because of his apprehension and the taking of the book from him before he had an opportunity to apply it to the intended use. While the courts and officers of the law, having in hand the trial of appellee under the warrants issued against him, were evidently unsatisfied that the foregoing facts and circumstances were sufficient to show his guilt of the charge in either warrant and are not censurable for resolving all reasonable doubts in favor of his innocence, we think it fairly within the record to say, that the facts shown by the evidence and appearing in the publications complained of were of such a character as to induce appellant and its employes to believe, in good faith, that appellee was guilty of the offense therein indicated.

It is apparent from the evidence as a whole that appellee's right of recovery in this case was rested, not upon the theory that he did not take an article of property which did not belong to him; nor that he did not conceal it in removing it from appellant's printing plant, but upon the single fact that he took it by mistake, into which he was led by its alleged resemblance to a book

which he thought he had the right to take. According to the entire evidence, save that furnished by the testimony of appellee alone, there was little resemblance between the Acts of the General Assembly and the Senate Journal of 1914. It may be conceded for the purposes of this case that appellant should have known what property had been given away by its employees. Yet when it discovered the appellee in possession of property to which he admitted he had no right, and which it knew belonged to it, the fact that it was taken by him without right and by concealing it from the view of appellant and its employees, together with his subsequent acts, showing a purpose to continue the concealment of the book and appropriate it to his own use, furnished a substantially truthful basis for the statements contained in the publications in question. Newspapers are not to be held to the exact facts nor to the most minute details of the transactions they publish. What the law requires is that the publication shall be substantially true. The truth in such case constitutes a complete defense, although the publication be inspired by malice or ill will, or, if false, would be libelous *per se.* Cooley on Torts, 3rd edition, p. 416; Townsend on Slander, 306; Malone v. Carrice, 16 R. 155; Rollins v. Louisville Times Co., 139 Ky. 778. In Courier-Journal Co. v. Phillips, 142 Ky. 372, it was held: That where the publication complained of is published in good faith and with a belief that it was true, and the evidence shows it to be substantially true, the defense is complete, and the defendant entitled to a peremptory instruction. To the same effect is the later case of Herald Publishing Co. v. Feltner, 158 Ky. 35.

We are not meaning to lay down the rule that newspapers should not be required to exercise due care in gathering and publishing public happenings, but to say that if the publication made goes no further than to state the facts of the occurrence or transaction and the facts so stated turn out to be substantially true, no ground will be given for the recovery of damages by one who fancies himself aggrieved or injured by such publication. Applying this rule to the case in hand no reason is perceived for declaring that it was disregarded by the publications made by appellant.

The facts stated therein, though they may not have been sufficient in a court trying appellee to establish his guilt beyond a reasonable doubt, were both as to his

taking of the book and what occurred in the police court and the court of County Judge Hieatt, substantially true.

We are, therefore, of opinion that the refusal of the peremptory instruction asked by appellant on the trial in the court below is reversible error.

For the reasons indicated the judgment is reversed, and cause remanded for a new trial consistent with the opinion.