# Brents v. Morgan.

(Decided November 15, 1927.)

## Appeal from Marion Circuit Court.

1. Libel and Slander.—Truth of matter published is complete defense to action for libel under Civil Code of Practice, section 124.

2. Torts.—"Right of privacy" is right to be let alone; that is, the right to be free from unwarranted publicity, or the right to live without unwarranted interference by public in matters with which it is not necessarily concerned.

3. Torts.—While right of privacy entitles one to be free from unwarranted publicity, it does not prohibit any publication of matter which is of public or general interest.

4. Torts.—Where right of privacy entitles one to be free from unwarranted publicity, it does not prohibit communication of any matter when publication is made under circumstances which would render it privileged according to the rule of libel and slander.

5. Torts.—While right of privacy entitles one to be free from unwarranted publicity, there is no redress for invasion of right of privacy by oral publication.

6. Torts.—While right of privacy entitles one to be free from unwarranted publicity, it ceases on publication of facts by the individual or with his consent.

7. Torts.—In action for unwarranted invasion of right of privacy, truth of matters published, or lack of malice of one publishing them, is no defense.

8. Damages.—Where right of privacy is invaded, the person injured is entitled to recover substantial damages, although the only damages suffered by him result from mental anguish, and cannot be measured by a pecuniary standard.

9. Torts.—There is a right of privacy, and the unwarranted invasion of such right will sustain an action in tort to recover damages.

10. Torts.—Petition alleging that defendant caused a notice to be placed on a show window fronting on a principal street, stating that "Dr. M. (plaintiff) owes an account here of $49.67, and, if promises would pay an account, this account would have been settled long ago," which notice caused plaintiff great mental pain, humiliation, and mortification, and tended to expose him to public contempt, ridicule, aversion, and disgrace, held to state cause of action in tort for unwarranted invasion of right of privacy.

11. Torts.—In action for unwarranted invasion of right of privacy by publishing notice that plaintiff owed an account, and that, if promises would pay it, the account would have been settled long ago, truth of facts stated in notice held no defense.

12. Damages.—In action for invasion of right of privacy by publication of notice respecting plaintiff's indebtedness, if defendant caused notice to be placed on front window of his garage facing on street for purpose of coercing payment of debt and exposing plaintiff to

public contempt, ridicule, aversion, or disgrace, plaintiff could recover in such sum as would reasonably compensate him for mental pain, humiliation, and mortification resulting directly from posting of notice.

CHARLES C. BOLDRICK and W. H. SPRAGENS for appellant.

OSSO W. STANLEY and HENRY S. McELROY for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The appellee, W. R. Morgan, is a resident of Marion county, and by profession he is a veterinarian. The appellant is a resident of the same county, engaged in the business of conducting an automobile garage. On June 23, 1926, the appellant caused a notice to be placed on a show window of his garage fronting on one of the principal streets of the city of Lebanon, the city in which both appellant and appellee reside, which notice was in words and figures as follows:

*"Notice.*

*"Dr. W. R. Morgan owes an account here of $49.67. And if promises would pay an account this account would have been settled long ago. This account will be advertised as long as it remains unpaid."*

This notice or sign covered a space five feet by eight feet, which rendered it conspicuous to all persons passing on the street.

The appellee instituted suit in the Marion circuit court alleging that this notice or sign was placed on the show window of appellant by himself or his servant or employee, without right or authority of law, and that it was unlawfully, wickedly, and maliciously done. He alleged that the publication of the notice or sign had caused him great mental pain, humiliation, and mortification, and that it tended to expose him to public contempt, ridicule, aversion, and disgrace, and to cause an evil opinion of him in the minds of tradesmen and the public generally, all to his damage in the sum of $5,000, for which he prayed judgment. Later appellee filed an amended petition, in which he alleged that appellant had maintained the notice or sign as aforesaid after the filing of his original petition, thus continuing his mental anguish up until the time of the filing of his amended petition, which had further damaged him in the sum of $1,500.

The appellant entered a motion to require appellee to verify his petition and amended petition, and at the same time interposed a general demurrer to the petition as amended. The motion to require appellee to verify his pleadings does not appear to have been disposed of by a ruling of the lower court, but the demurrer to the petition was overruled, and appellant excepted. The appellant then filed his answer, and the first paragraph thereof is a traverse of the petition and amended petition. In a second paragraph of his answer appellant alleged that, at the time of the publication by the appellant of the notice set out in the petition, and that at all times after that date, and for some time prior thereto, the appellee, Morgan, was owing the appellant an account of $49.67. He also alleged that appellee had promised more than once, and long before the publication complained of, to pay that amount, but had failed to do so, and that he had not done so up to filing of the answer. Appellant admitted, in this paragraph of the answer, having notified appellee that such notice would be published unless the account was paid.

Taking the answer of appellant as a whole, it amounts to the adimission by him that he placed this notice or sign on his window, and that the statements therein contained were true.

A general demurrer was filed by appellant to the second paragraph of the answer, and was sustained by the court with an exception by appellant. As the petition does not allege the statement contained in the notice was false, and as the court sustained a demurrer to the plea entered by the appellant the statement was true, it is made to appear that the lower court did not regard the truthfulness of the statement as a defense to the cause of action alleged by appellee in his petition and amended petition. It follows, therefore, that the lower court did not regard this action as one for libel within the ordinary meaning of such an action, as the establishment of the truth of an alleged libelous publication is a complete defense to such an action in this state. Truth is a justification for libel under the provisions of section 124 of the Civil Code. It was so held in the cases of Courier-Journal Co. v. Phillips, 142 Ky. 372, 134 S. W. 446, 32 L. R. A. (N. S.) 309; Vance v. Louisville Courier-Journal Co., 95 Ky. 41, 23 S. W. 591, 15 Ky. Law Rep. 412; Evening Post Co. v. Richardson, 113 Ky. 641, 68 S. W. 665, 24 Ky. Law Rep. 456;

Rollins v. Louisville Times Co., 139 Ky. 788, 90 S. W. 1081, 28 Ky. Law Rep. 1054, 90 S. W. 1081.

The case went to trial on the issue as to whether or not appellant placed the notice or sign on his window, or caused it to be placed thereon, as alleged in the petition. The jury returned a verdict in favor of appellee for $1,-000. Appellant is asking for a reversal of the case solely on the ground that the statements in the notice were true. Counsel for appellant state in their brief that there are other grounds for reversal which they will not discuss, although relied on in their motion and grounds for a new trial. The reason they declined to go into a discussion of them is because, as they insist, that the judgment must be reversed because of the ground which they do discuss; that is, that the court should have sustained a demurrer to the petition because it does not allege that the statements contained in the notice were false, or, if not for that, because the court should have overruled the demurrer to that paragraph of appellant's answer in which he pleaded the truth of the statements in the notice, or if not for that, because the court should have given the jury a peremptory instruction to find for appellant because it was not shown that the statements in the notice were false.

Counsel for appellee, however, admitting the correctness of the principles of law relied on by appellant, still insists that the petition stated a cause of action, and, while it may not be an action for libel it is a good cause of action nevertheless, and should be sustained by this court. Counsel for appellee argue in their brief that the publication of the notice was an invasion of the rights of plaintiff, and constituted a malicious wrong and injury done to him, and that there should be some remedy. They express their belief that the action may be classified as a special action on the case as defined in 26 R. C. L. 982. If this position of theirs cannot be sustained they insist that there must be an exception to the general rule that the truth is a complete defense in an action for libel. The case of Riley v. Lee, 88 Ky. 603, 11 S. W. 713, 11 Ky. Law Rep. 586, 21 Am. St. Rep. 358, is cited as a correct statement of the legal definition of libel, and, arguing from that definition, counsel for appellee insist that the publication of the notice set out in the answer tended to degrade the appellee, and to reduce his character or reputation in the estimation of his friends or acquaintances, or the public, from a higher to a lower grade, and that

further it tended to deprive him of the favor and esteem of his friends or acquaintances or the public, and that it tended to render him odious, ridiculous, and contemptible in the estimation of his friends or acquaintances or the public, and for that reason the publication was undoubtedly libelous per se. That argument is unanswerable, except by the decisions of this court holding that truth is a complete defense in an action for libel.

In the case of Thompson v. Adelberg & Berman, Inc., 181 Ky. 487, 205 S. W. 558, 3 A. L. R. 1594, this court held that the posting of a notice on the house of the plaintiff, which notice was on a number of conspicuous cards tacked up on the house and in the yard, was actionable.

That notice was as follows:

"PLEASE TAKE NOTICE

"Our collector was here for payment. We would save you the annoyance of his further calls if you will pay at the store."

The question as to whether truth was a complete defense in an action for libel was not discussed by this court in that case, but the court took occasion to say:

"Viewing the transaction in the light of this fact, it cannot be doubted that defendant's real purpose was to coerce the payment of its debts by publishing plaintiff's delinquency, and thus disgracing her in the eyes of the public."

In that case the court did not attempt to classify the action or determine whether it was one of libel. Certainly it was closely akin to libel. There was probably no statement in the notice tacked upon the premises of the plaintiff which was untrue, and yet this court held that the tacking up of the notice on the premises was actionable.

Appellee relies on a number of cases of which Hutchins v. Page, 75 N. H. 215, 72 A. 689, 31 L. R. A. (N. S.) 132, is the strongest, where it is held that the truth of the facts published is, in general, a defense in a civil action for libel, but that there are certain exceptions to the general rule, and that the benefit of such defense may be lost where the matter described is a private one with which the defendant nor the public has any legitimate concern, or where, even if the substance of the matter is proper, the manner and style render the publication libelous.

An examination of these authorities will show that, in nearly every instance there was a statute covering the question which served to prevent the establishment of the truth of a libelous publication from constituting a complete defense. In a few states where there is no statute on the subject, it has been held that truth is not always a complete defense, but in our state, as has been stated above, we not only have a statute making truth a complete defense, but the rule has been uniformly upheld by the decisions of this court.

A new branch of the law has been developed in the last few years which has found place in the text-books and the opinions of courts which is denominated the right of privacy. It has not been concretely defined, and probably is not subject to a concrete definition, but it is generally recognized as the right to be let alone, that is, the right of a person to be free from unwarranted publicity, or the right to live without unwarranted interference by the public about matters with which the public is not necessarily concerned. A paper was published in the Harvard Law Review on December 15, 1890, by Samuel D. Warren and Louis D. Brandeis on this subject, and it appears to be the first effort to bring together rules or principles which might serve to govern in cases where the right of privacy has been invaded in an unwarranted manner. In that paper the authors undertook to state generally what constituted violation of the right of privacy. They stated certain exceptions which are here given consideration.

The first exception is that the right of privacy does not prohibit any publication of matter which is of public or general interest. That is a sound statement of the law.

The second exception noted is that the right to privacy does not prohibit the communication of any matter, though in its nature private, when the publication is made under circumstances which would render it a privileged communication according to the rule of slander and libel. That is also sound, as is the third exception that there could not be a grant of redress for the invasion of privacy by oral publication.

The fourth exception noted is that the right to privacy ceases upon the publication of the facts by the individual or with his consent. Obviously this would be true. It is also stated in the same paper that the truth of the matter published does not afford a defense, and that in dealing with the unwarranted invasion of the

right of privacy this branch of the law should have no concern with the truth or falsehood of the matters published, and, further, that the absence of malice in the publisher does not afford a defense. These principles are sound. A number of authorities are cited by the authors of this paper in support of the principles which they set down, but, independently of these authorities, the development of this branch of the law since the paper was written has confirmed the soundness of the principles announced by them which are referred to above.

As far back as 1867 this court, in the case of Grigsby and Wife, v. R. J. Breckinridge, 65 Ky. (2 Bush) 480, 92 Am. Dec. 509, makes allusions to what would be denominated the right of privacy at the present time. That suit involved the right of the husband to prevent the publication of letters which had been written to his wife then dead. The court decided that there was a property right in such letters, and for that reason a court of equity had jurisdiction to consider the questions there involved. In the course of the opinion there was an intimation, however, that, if the publication of the letters would affect the memory of his wife, and thereby subject him to annoyance, he might have redress, but there was no suggestion or intimation as to how he might go about obtaining it. The court said:

"His petition, without intimating that the publication would affect the memory of his wife, or in any way subject him to loss or annoyance, claims that he is entitled to those letters, either as administrator or surviving husband; and nowhere, as mere author, does he claim the possession of the letters written by himself."

In a dissenting opinion in that case Judge Williams seems to have had in his mind something at least approaching the modern doctrine of privacy. He there said:

"It is then a simple, naked, legal question, whether a wife can, by gift to an alien to her husband's family, part with his social confidential letters to her, and thus put them beyond his reach, subject to the gaze of the idle and curious, and liable to the animadversions of the illiberal and the unfriendly equally with those well-disposed toward him."

Again in the same dissent Judge Williams said:

> "Then, in the name of every husband and wife of the commonwealth, and as I regard the sacred, secret privacy of the family relation, and its security against the prying eye of the curious, I dissent from the recognition of any legal rule which will expose these sacred relations and private affairs to the gaze of the world or outside community through the agency of either husband or wife."

The majority opinion had not held that such could be done, and we are not citing the dissenting opinion of Judge Williams as authority, but rather to show that the doctrine of the right of privacy, while modern in every sense, is older than generally recoginized in the opinions of the courts which we have read.

In the case of Douglas v. Stokes, 149 Ky. 506, 149 S. W. 849, 42 L. R. A. (N. S.) 386, Ann. Cas. 1914B, 374, this court upheld a judgment for $2,500 which had been recovered in an action based upon the unwarranted invasion of the private rights of G. W. Stokes and wife, to whom were born twin boy children.. The children were together from the shoulders down to the end of their bodies. After their death, Stokes employed one Douglas to take a photograph of the corpse in a nude condition; it being agreed at the time that Douglas was to make for him twelve photographs, and no more. Contrary to his agreement, however, Douglas made other photographs from the negative, and one of these he filed in the copyright office of the United States, and a copyright was issued to him. Stokes and his wife instituted suit to recover damages for the use of the negative, charging that by the exposure they had been humiliated, and their feelings and sensibilities had been wounded. The court upheld the judgment in their favor. The court said:

> "The corpse of the children was in the custody of the parents. The photographer had no authority to make the photographs, except by their authority, and when he exceeded his authority he invaded their right."

Again the court said:

> "The most tender affections of the human heart cluster about the body of one's dead child. A man

may recover for any injury or indignity done the body, and it would be a reproach to the law if physical injuries might be recovered for, and not those incorporeal injuries which would cause much greater suffering and humiliation.''

Again the court said:

"If the defendant had wrongfully taken possession of the nude body of the plaintiff's dead children and exposed it to public view in an effort to make money out of it, it would not be doubted that an injury had been done them to recover for which an action might be maintained.''

There is no property right in a dead body, and the opinion in the case of Douglas v. Stokes, supra, could have been put on no ground other than the unwarranted invasion of the right of privacy. In the case of Foster-Milburn Co. v. Chinn, 134 Ky. 424, 120 S. W. 364, 34 L. R. A. (N. S.) 1137, 135 Am. St. Rep. 417, this court alludes to the branch of the law recognizing the right of privacy and approves it.

21 R. C. L. par. 3, p. 1197, under the general title of "privacy," states:

"The right of privacy is incident to the person and not to property. Its foundation is in the conception of an inviolate personality and personal immunity. It is considered as a natural and an absolute or pure right springing from the instincts of nature. It is of that class of rights which every human being had in his natural state and which he did not surrender by becoming a member of organized society. The fundamental rights of personal security and personal liberty include the right of privacy, the right to be let alone. The right of personal security embraces the right to the enjoyment of life which means more than the mere right to breathe. The right to enjoy life is a right to enjoy life in the way most agreeable and pleasant, and the right of privacy is nothing more than a right to live in a particular way.''

We quoted the above text, not for the purpose of approving in its entirety the pronouncements therein, but to show that there is a right of privacy which may

not be violated by unwarranted publicity. In the succeeding paragraph of 21 R. C. L. at page 1198, it is said:

> "Violation of the right of privacy consists in
> the interference with another's seclusion by subject
> ing him to unwarranted and undesired publicity."

Several cases are cited in support of the text. Then
in the same volume, page 1200, we find this statement of
the law:

> "The violation of the right of privacy is a tort
> and the injured person is entitled to recover
> damages."

He is entitled to recover substantial damages, although the only damages suffered by him resulted from
mental anguish. The fact that the damages cannot be
measured by a pecuniary standard is not a bar to his recovery.

We shall not attempt to bring together in this
opinion a citation of the opinions of other courts on this
question. We are content to hold that there is a right
of privacy, and that the unwarranted invasion of such
right may be made the subject of an action in tort to recover damages for such unwarranted invasion. The legal
path which has written at its entrance "Privacy," or
"Right of Privacy," is new, and by no means well
trodden, and for that reason we venture upon it with
some hesitancy, and with all safeguards.

This brings us to the immediate question as to
whether the appellant has injured appellee by an unwarranted invasion of his right of privacy. Our conclusion is that appellee in his petition and amended petition stated a good cause of action against appellant, and
that the lower court correctly overruled the demurrer to
the petition, and correctly sustained the demurrer to the
second paragraph of the answer, and it follows that he
properly overruled the motion for a peremptory instruction directing the jury to return a verdict for appellant.

We find that the instruction given to the jury by the
lower court does not meet our views, and that it was
erroneous. On another trial he will give an instruction
as follows:

> "If the jury believes from the evidence that the
> defendant, Brents, either in person or through his
> servants or employees, caused to be placed upon the

front window of his garage facing on Main street in Lebanon, Ky., the notice set out in the petition and referred to in the testimony, and shall further believe from the evidence that he, or his agents and servants under his instructions, did so for the purpose of coercing the payment of a debt then due plaintiff by the defendant, or for the purpose of exposing the plaintiff to public contempt, ridicule, aversion, or disgrace, you will find for the plaintiff such sum in damages, if any, as will reasonably compensate him for any mental pain, humiliation, or mortification caused to him, resulting directly from the posting of the said notice, not to exceed, however, the sum of $6,500.

"Unless you believe from the evidence that the defendant, or that some agent or servant of his, placed said sign upon the front window of his garage aforesaid, you will find for the defendant, or, if you believe from the evidence that he did so, but further believe from the evidence that the plaintiff suffered no mental pain, humiliation, or mortification resulting directly from the posting of said notice, you will find for the defendant."

Because of error in the instruction the case must be reversed. Some complaint is made about the admission and rejection of evidence, but the particular evidence is not called to our attention in the briefs, and an examination of the rulings of the court on the admission and rejection of the evidence convinces us that there was no material error in this respect.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.