## SIDIS v. F–R PUB. CORPORATION.

District Court, S. D. New York.
Dec. 20, 1938.

Thomas H. Greene and William E. Russell, Jr., both of New York City, for plaintiff.

Greenbaum, Wolff & Ernst, of New York City (Morris L. Ernst, Alexander Lindey, and Harriet F. Pilpel, all of New York City, of counsel), for defendant.

GODDARD, District Judge.

This is a motion by the defendant to dismiss the first and second causes of action set forth in the complaint on the ground that they failed to state a claim upon which relief can be granted within the meaning of subdivision (b) of Rule 12 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The defendant, F–R Publishing Corporation, is the publisher of a magazine "The New Yorker" which has a general circulation throughout the United States and to some extent abroad. The plaintiff complains of two articles in "The New Yorker"; one of which appeared in the issue of August 14, 1937, and was entitled "Where Are They Now? April Fool!" The other appeared in "The New Yorker" on December 25, 1937, and was entitled "Where Are They Now? Prodigy." The articles are biographical in character and purport to set forth the facts relating to the life of plaintiff, William James Sidis. The issue of August 14, 1937, included what purports to be a picture of the plaintiff. Both of the ar-

ticles relate to the plaintiff who, at the age of eleven, lectured to a group of Harvard professors on the Fourth. Dimension, and who had become more or less known as an infant prodigy, and proceeds to describe his career up to the present. The articles are long, and it seems unnecessary to set them forth in full.

The first cause of action is for the alleged violation of the plaintiff's right of privacy under the laws of California, Georgia, Kansas, Kentucky and Missouri, where the magazine was circulated. The second cause of action alleges a violation of sections 50 and 51 of the New York Civil Rights Law, Consol.Laws N.Y., c. 6, §§ 50 and 51, commonly known as "The Right of Privacy", and plaintiff endeavors to support this claim under the New York law by also alleging as ground for relief an announcement of the August article in the New York World .Telegram, which states—"Out To-Day. Harvard Prodigy. Biography of the Man Who Astonished Harvard at the Age of Eleven. Where Are They Now? By J. L. Manley, p. 22, The New Yorker".

The defendant, for the purpose of this motion only, concedes that the said issues of the New Yorker were distributed in the states alleged by the plaintiff, but it contends that neither article constitutes a violation of the plaintiff's right of privacy under the laws of California, Georgia, Kansas, Kentucky · or Missouri, as alleged in the first cause of action, and that neither article constitutes a violation of sections 50 and 51 of the New York Civil Rights Law, and that the announcement in the New York World Telegram does not constitute a violation of either of the last-named sections as alleged in the second cause of action. Further, the defendant disputes the plaintiff's "theory that the law of six states can apply to a single publication", and contends that the New York law alone is applicable to the matter sued upon. The complaint includes a third cause of action for alleged malicious libel, which is not now being attacked.

The complaint, after alleging that the plaintiff is a citizen and resident of the State of Massachusetts, and that the defendant is a New York corporation and publishes for gain and profit the magazine "The New Yorker", having a circulation throughout the United States, with its principal place of business in the City of New York, alleges in the first cause of action the defendant's publication with the articles referred to, without plaintiff's consent, and that the defendant circulated or caused to be circulated the said articles in the States of California, Georgia, Kansas, Kentucky and Missouri, all in violation of plaintiff's right of privacy as recognized by the Laws of those States; then goes on to allege that

"4. That said articles and cartoon concerning and referring to plaintiff were published by the defendant with actual malice towards the plaintiff."

"5. That the publication of the aforesaid articles and cartoon tended to expose, and did expose, the private life of the plaintiff to unwarranted and undesired publicity of a nature unfavorable and harmful to the plaintiff, and tended to and did hold up the plaintiff to public scorn, ridicule, and contempt causing him grievous mental anguish, humiliation, and loss of reputation, and as a result of the aforesaid publications the plaintiff was and for a long time to come will be severely damaged and handicapped in his employment as a clerk or in any other employment and in his social life and pursuit of happiness, all to plaintiff's great damage, as recognized by the laws of the States of California, Georgia, Kansas, Kentucky and Missouri, as aforesaid."

"6. Plaintiff claims exemplary damages on the ground of defendant's actual malice in accordance with the laws of the States of California, Georgia, Kansas, Kentucky and Missouri."

It is true that the decisions of the courts in the States referred to, viz., California, Georgia, Kansas, Kentucky and Missouri, do recognize "the right of privacy" to a greater degree than most of the other states of the Union, based on the common law of the State as in Georgia, Kansas, Kentucky and Missouri, or upon constitutional limitations, as in California. Although the right of privacy has been recognized and protected in these states where exceptional circumstances have existed and this right had been unfairly imposed upon, or when an unauthorized use has been made of one's name or picture for commercial purposes or advertising, no decision of the courts in these states has been cited by counsel,

nor have I found any which held the "right of privacy" to be violated by a newspaper or magazine publishing a correct account of one's life or doings, or a picture, except under abnormal circumstances which do not exist in the case at bar. I think that an examination of the facts in the cases which plaintiff relies upon bears this out.

California. Melvin v. Reid, 112 Cal. App. 285, 297 P. 91, 93. The defendant produced a motion picture based upon the earlier life of the plaintiff, who formerly had been a person of considerable notoriety as a prostitute who had been tried for murder, and the defendant used the plaintiff's maiden name in advertising the picture. It was held that an action for violation of right of privacy could not be maintained, but that there had been an actionable invasion of her constitutional right to pursue and obtain happiness guaranteed by the Constitution of that state; that since the plaintiff "had abandoned her life of shame, had rehabilitated herself, and had taken her place as a respected and honored member of society", she should have been permitted to continue its course without having her reputation and social standing destroyed by the publication for private gain of the story of her former depravity; also that the use of the plaintiff's name in advertising the picture, with the incidents of her former life, was an unwarranted attack upon her reputation.

Georgia. Pavesich v. New England Life Insurance Company, 122 Ga. 190, 50 S.E. 68, 69 L.R.A. 101, 106 Am.St.Rep. 104, 2 Ann.Cas. 561, involved the publication by the defendant of an advertisement of an insurance company containing plaintiff's picture and a statement that the plaintiff has policies of insurance with that company, and quoted the plaintiff as stating that he is pleased with his investment; whereas the plaintiff has never made such statement nor taken out a policy with the defendant company, nor consented to the use of his name. This was held to be in no sense an exercise of the liberty of speech or of the press, and the court overruled demurrers to the two counts in the petition—one for violation of plaintiff's right of privacy; the other —for libel.

In the case of Bazemore v. Savannah Hospital et al., 171 Ga. 257, 155 S.E. 194, 195, the plaintiff's deformed still-born baby was, unknown to the parents, secretly allowed by the hospital authorities to be photographed by a photographer who sold the pictures to the public, and the defendant hospital caused the defendant newspaper to be supplied with one of the pictures which it published with a news story. This was held to be a violation of plaintiff's right of privacy. However, it is to be noted that one of the allegations of the petition was that what was done was "in violation of the confidence and trust reposed in the hospital".

In Goodyear Tire & Rubber Co. et al. v. Vandergriff, 52 Ga.App. 662, 184 S.E. 452, an employee of the Goodyear Company impersonated the plaintiff over the telephone and thus obtained confidential price quotations from competing dealers in tires. As a result plaintiff was annoyed by tire dealers and his reputation as a business man was injured, as he was also charged with having disclosed prices quoted to him in confidence. It was held that plaintiff's right of privacy and the right to the exclusive use of his own name had been invaded.

Kansas. In Kunz v. Allen, 102 Kan. 883, 172 P. 532, L.R.A.1918D, 1151, it was held that the plaintiff's right of privacy had been violated where, unknown to plaintiff, she had been photographed in the defendant's store and then, without her consent, her photograph used in a motion picture to advertise defendant's business.

Kentucky. In Brents v. Morgan, 221 Ky. 765, 299 S.W. 967, 55 A.L.R. 964, the facts were as follows: The defendant conducted a garage. The plaintiff owed him $49.67. The defendant placed a large sign in the front window of his garage informing the public that plaintiff had often promised to pay his bill but had not done so and that he would continue to advertise it until it was paid. The court stated that the right of privacy should be strictly limited and while this right entitles one to be free from unwarranted publicity, it does not prohibit publication of matter which is of general or public interest, but held that this was an instance of unwarranted publicity in a matter in which the public was not necessarily concerned, and that if the jury found that defendant had put the sign in the window for the purpose of exposing plaintiff to contempt, ridicule or disgrace, a verdict could be rendered for plaintiff, even

though the statements on the sign were true.

Douglas v. Stokes, 149 Ky. 506, 149 S.W. 849, 42 L.R.A.,N.S., 386, Ann.Cas. 1914B, 374. The defendant, a photographer, was employed by plaintiff to make a photograph of the nude bodies of twin babies which were bound together like siamese twins that died shortly after plaintiff's wife gave birth to them. It was agreed that defendant was to make twelve copies for the plaintiff and no more. Contrary to this agreement defendant made several other copies from the negative, one of which he filed in the United States Copyright Office for the purpose of obtaining a copyright for himself. It was held that defendant had no authority to do this and his misuse of the negative was a violation of plaintiff's right of privacy in respect to the bodies of his dead children.

Foster-Milburn v. Chinn, 134 Ky. 424, 120 S.W. 364, 34 L.R.A.,N.S., 1137, 135 Am.St.Rep. 417. The Foster-Milburn Company, a manufacturer of patent medicines, issued an advertising pamphlet and in it included a picture of J. P. Chinn, a well known breeder of horses in Kentucky, and a forged recommendation by him of Foster-Milburn's kidney pills and statement that he was cured by them. Neither the use of his picture nor the statements were authorized by Chinn. This was held to be the use of a person's pictures without his consent for the purpose of advertising and exploiting the business of another and the violation of the right of privacy.

Jones v. Herald Post Company, 230 Ky. 227, 18 S.W.2d 972. While walking with his wife along the street a man was assaulted and stabbed to death. A Louisville newspaper published an account of the occurrence with a photograph of the deceased; also the wife's photograph made at the time and statements made by her directly after her husband was stabbed. On appeal sustaining a demurrer, the court, after saying that the right of privacy is the right to be let alone, stated—"There are times, however, when one, whether willingly or not, becomes an actor in an occurrence of public or general interest. When this takes place, he emerges from his seclusion, and it is not an invasion of his right of privacy to publish his photograph with an account of such occurrence. Brents v. Morgan

221 Ky. 765, 299 S.W. 967, 55 A.L.R. 964." 230 Ky. 227, 18 S.W.2d page 973.

In Rhodes v. Graham, 238 Ky. 225, 37 S.W.2d 46, the petition alleged that the defendants had tapped the telephone wires leading to plaintiff's residence and listened to conversations made by plaintiff in violation of plaintiff's right of privacy. On appeal a demurrer was overruled and the court said—"Whenever a telephone line is tapped the privacy of those talking over the line is invaded and conversations, wholly proper and confidential, may be overheard. Wire tapping is akin to eavesdropping, which was an indictable offense at common law, and while it has not been made a punishable offense by statute in this state, we conclude that the facts alleged in the petition in this case constitute a wrong done to appellant for which the law affords a remedy by an action for damages". 238 Ky. 225, 37 S.W. 2d page 47.

Missouri. Munden v. Harris et al., 153 Mo.App. 652, 134 S.W. 1076. The defendants were jewelry merchants in Kansas City and used the picture of the infant plaintiff and a statement falsely attributed to her to advertise their business, and this was held to be a violation of her personal right of privacy.

I do not think that the facts alleged by the plaintiff in the first cause of action constitute a cause of action for violation of the right of privacy which is recognized by any of the states mentioned in the first cause of action, namely—California, Georgia, Kansas, Kentucky or Missouri, where the defendant's magazine was alleged to have been circulated.

In the second cause of action the plaintiff, after repeating paragraphs 1 and 2 of the first cause of action, alleges the publication by the defendant of these articles in the New Yorker without the plaintiff's consent and the circulation of the magazine containing the articles in the State of New York; also that defendant, without plaintiff's consent, "advertised said article in an advertisement in New York World-Telegram, a daily newspaper of wide circulation in the metropolitan area of New York City" and that this was in violation of plaintiff's right of privacy as recognized by Article 5 of sections 50 and 51 of the Civil Rights Law of the State of New York. It also alleges that they were published by the defendant "as a deliberate and sensation-

al journalistic scheme by the defendant to increase the sales of and the profits from its said magazine, 'The New Yorker' by showing the plaintiff's peculiarities as of appearance, dress, speech, and mode of living and his personal fads, eccentricities and private life, both past and present, to the amusement of the said magazine's readers and to the enrichment of the defendant" * * * "and were used by the defendant for advertising purposes and for the purposes of trade, in violation of Article 5, sections 50 and 51, of the Civil Rights Law of the State of New York."

And further alleges:

"II. That the publication of the aforesaid articles, cartoon and advertisement tended to expose, and did expose, the private life of the plaintiff to unwarranted and undesired publicity of a nature unfavorable and harmful to the plaintiff, and tended to and did hold up the plaintiff to public scorn, ridicule and contempt, causing him grievous mental anguish, humiliation, and loss of reputation, and as a result of the aforesaid publications the plaintiff was and for a long time to come will be severely damaged and handicapped in his employment as a clerk or in any other employment and in his social life and pursuit of happiness, all to plaintiff's great damage, as recognized by the laws of the State of New York, as aforesaid."

"12. Plaintiff claims exemplary damages on the ground that the said articles, cartoon and advertisement concerning and referring to plaintiff were published by the defendant with knowledge that plaintiff's name, portrait and picture, therein contained, were thus being used without the defendant or its agents having first obtained the written consent of plaintiff and were used by the defendant for advertising purposes and for the purposes of trade, in violation of Article 5, sections 50 and 51, of the Civil Rights Law of the State of New York aforesaid."

Sections 50 and 51 of the New York Civil Rights Law[1] prohibit the unauthorized use "for advertising purposes, or for purposes of trade" of "the name, portrait or picture of any living person".

The defendant's contention is that neither the plaintiff's name nor picture was used for advertising or trade purposes.

A consideration of the history and background of these sections is helpful in determining their purpose and application. They were enacted soon after the decision by the New York Court of Appeals in the case of Roberson v. Rochester Folding Box Co., 171 N.Y. 538, 64 L.R.A. 442, 59 L.R.A. 478, 89 Am.St.Rep. 828, where lithographic prints, photographs and likenesses of the plaintiff, a young woman, were used by defendant without her consent to advertise a cer-

---

[1] "§ 50. Right of Privacy.—A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor."

"§ 51. Action for injunction and for damages. Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by the last section, the jury, in its discretion, may award exemplary damages. But nothing contained in this act shall be so construed as to prevent any person, firm or corporation, practicing the profession of photography, from exhibiting in or about his or its establishment specimens of the work of such establishment, unless the same is continued by such person, firm or corporation after written notice objecting thereto has been given by the person portrayed; and nothing contained in this act shall be so construed as to prevent any person, firm or corporation from using the name, portrait or picture of any manufacturer or dealer in connection with the goods, wares and merchandise manufactured, produced or dealt in by him which he has sold or disposed of with such name, portrait or picture used in connection therewith; or from using the name, portrait or picture of any author, composer or artist in connection with his literary, musical or artistic productions which he has sold or disposed of with such name, portrait or picture used in connection therewith." (As amended in 1921). McKinney's Consolidated Laws of New York, Book 8, §§ 50 and 51.

tain brand of defendant's flour. Upon the paper above the plaintiff's portrait, printed in large letters, were the words—"Flour of the Family", and below the portrait, in a corner, the words—"Rochester Folding Box Co., Rochester, N. Y.", and upon the same sheet were other advertisements of the Franklin Mills Company. And these lithographs were displayed in stores, warehouses, saloons and other public places to the humiliation and distress of the plaintiff. In a suit brought by Miss Roberson to restrain the defendants, the New York Court of Appeals held that under the New York law, as it then stood, the plaintiff had no remedy. The Legislature of the State of New York promptly enacted sections 50 and 51, making such brazen commercial use of an individual's name or picture actionable in New York. What these sections prohibited was the unauthorized "use" of one's name or picture "for advertising purposes or for the purposes of trade". These sections do not prohibit the mere publication of one's name or picture. So far as I am aware these sections have never been interpreted as prohibiting a newspaper, magazine, from publishing news or accounting facts regarding a person, or publishing a person's picture. If such item or article is unfair and libelous the aggrieved person has the common law remedy of suing for libel. See Moser v. Press Publishing Co., 59 Misc. 78, 109 N.Y.S. 963. While it is true that the publisher of the magazine or newspaper containing the facts about a person, or his picture, sells the newspaper or magazine this, it seems to me, is plainly not the use "for advertising purposes or for the purposes of trade" contemplated by sections 50 and 51 of the New York Civil Rights Law. It is not the publishing but it is the particular use made of one's name or picture which is prohibited by these sections. Moser v. Press Publishing Co., 59 Misc. 78, 109 N.Y.S. 963; Middleton v. News Syndicate Co., 162 Misc. 516, 295 N.Y.S. 120. Whether the article published or picture be given away or sold is quite unimportant. Just as in Miss Roberson's case, it mattered little to her that the Flour Company distributed free the lithograph bearing her picture and its advertisement. What she complained of was the use to which her picture was put.

To interpret sections 50 and 51 as meaning that the mere publication of a person's name or picture with a correct statement of the facts relating to him or an account of his doings is such a prohibited "use" of a person's name or picture, would not be justified by the history of those sections and their evident purpose. Such an interpretation would mean that the sale of any newspaper, magazine or book containing the name or picture of a living person was unlawful, unless the consent of the person had been obtained, and this is not the generally accepted view of the law to-day.

In Neyland v. Home Pattern Co., 2 Cir., 65 F.2d 363, Judge Learned Hand, referring to sections 50 and 51 of the New York Civil Rights Law, said—"The statute does not prohibit publication of a man's doings, whatever they may be. D'Altomonte v. New York Herald Co., 208 N.Y. 596, 102 N.E. 1101. He must look to the law of libel." 65 F.2d page 365.

See, also, Sarat Lahiri v. Daily Mirror, 162 Misc. 776, 295 N.Y.S. 382; Sweenek v. Pathe News, Inc., D.C., 16 F.Supp. 746; Colyer v. Richard K. Fox Publishing Co., 162 App.Div. 297, 146 N.Y.S. 999; Humiston v. Universal Film Mfg. Co., 189 App.Div. 467, 178 N.Y.S. 752. cf. Corliss v. E. W. Walker Co., C.C., 57 F. 434, 31 L.R.A. 283.

In the cases where the right of privacy protected by sections 50 and 51 was found to have been invaded, the name or picture had been used without consent to exploit and sell some article. cf. Rhodes v. Sperry & Hutchinson Co., 193 N.Y. 223, 85 N.E. 1097, 34 L.R.A.,N.S., 1143, 127 Am.St.Rep. 945; Eliot v. Jones, 66 Misc. 95, 120 N.Y.S. 989.

Plaintiff relies to a large extent upon Binns v. Vitagraph Co., 210 N.Y. 51, 103 N.E. 1108, L.R.A.1915C, 839, Ann.Cas. 1915B, 1024. It involved a fictional presentation of the wreck of the S. S. Republic and Binns, the wireless operator aboard the ship. The defendant, a manufacturer of films for moving picture theatres, used the name and picture of the plaintiff without his consent in a series of moving pictures purporting to represent scenes in which plaintiff had taken part. The films were not genuine, but had been made in defendant's studio and actors had been employed to impersonate the plaintiff. The scenes bore titles such as "John R. Binns, the wireless operator in his cabin aboard the S. S. Re-

public". The plaintiff had not consented to the use of his name or picture. The court held that such use of plaintiff's name and picture was commercial and for the purpose of trade and advertising and is prohibited by sections 50 and 51 of the Civil Rights Law. In the Binns case the defendant made capital of the unauthorized use of the plaintiff's name and picture. It used them for the purpose of advertising and marketing its film. This was a clear infringement of the right of a person to control the use of his name or picture for advertising or trade purposes. Rhodes v. Sperry & Hutchinson Co., 193 N.Y. 223, 85 N.E. 1097, 34 L.R.A.,N.S., 1143, 127 Am.St. Rep. 945. It is plain that there is a wide difference between such forbidden use of one's name and picture and the mere publication in a newspaper or magazine of an account of one's deeds or doings together with his picture. I doubt if anyone would seriously contend that the newspapers of that day violated Binns' right of privacy in publishing accounts of the wreck of the steamship Republic and of Binns summoning assistance by wireless, together with his picture, or that a legal distinction can be made between such publication and the publication at bar on the ground that the former was a matter in which the public had a greater current interest than in the career of William James Sidis.

In the case of Martin v. Press Publishing Co., 93 App.Div. 531, 87 N.Y.S. 859, cited by plaintiff, an article was published about a former Oxford professor who had become poverty stricken. The complaint was upheld but on the ground that the article· was libelous per se—not that the plaintiff's right of privacy had been violated.

It appears from the decisions in the five states referred to above that in those states the unauthorized use of one's name or picture for advertising purposes or for commercial exploitation is held to be a violation of one's common-law right of privacy. In New York, on the other hand, it was held that the common law does not afford a person protection from such use of his name or picture and statute was enacted forbidding their use for such purposes. In those states, as well as in New York, the unauthorized use of a person's name for advertising or commercial exploitation is unlawful; but neither the decisions in those states nor in New York hold that it is a violation of the right of privacy to publish one's picture or name in a magazine or newspaper with a fair statement of facts relating to him or a fair account of his doings. In all these states, as in New York, the law of libel may be resorted to if one is treated unfairly by the publisher.

I think I am safe in saying that the right of free speech and freedom of the press is still preserved throughout this country, and that under our laws one may speak and publish what he desires provided no offense against public morals or private reputation is committed; and provided that, at least in the states now under consideration, a person's name or picture may not be used without his consent for trade exploitation or advertising purposes. However, in my judgment, the facts alleged in the first cause of action of plaintiff's complaint for violation of plaintiff's right of privacy in the states of California, Georgia, Kansas, Kentucky and Missouri, do not constitute a cause of action; nor do the facts alleged in the second cause of action constitute a violation of sections 50 and 51 of the Civil Rights Law of New York as charged in the complaint, and the question whether or not the plaintiff has been libelled is not presented in this motion.

Accordingly, the defendant's motion to dismiss these two alleged causes of action is granted. Settle order on notice.