96 N.J. Super. 72 (1967)
232 A.2d 458
ARNOLD PALMER, GARY PLAYER, DOUG SANDERS AND JACK NICKLAUS, PLAINTIFFS,
v.
SCHONHORN ENTERPRISES, INC., A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 5, 1967.
*73 Mr. Lawrence M. Perskie for plaintiffs (Messrs. Perskie & Perskie, attorneys).
Mr. Roger M. Kahn for defendant (Messrs. Lester and Kahn, attorneys).
*74 HORN, J.S.C.
Cross-motions for summary judgment.
Plaintiffs, well-known professional golfers and members of Professional Golfers' Association of America, seek an injunction and damages with respect to use of their names by defendant in conjunction with and as part of a game, the component parts of which are gathered in a paperboard box. The cover of the box has a large lithographic drawing of a golfer completing his swing and of a caddy holding a golf bag in the presence of spectators. The cover also bears the caption:
"PRO-AM GOLF GAME. 18 Championship holes. Profiles and playing charts of 23 famous golfers. Yardage ruler. Ball markers. Tee. Flag. Score cards. Dice. AS CHALLENGING AND EXCITING AS GOLF ITSELF."
As part of the contents of the game, on each of 23 individual sheets of paper, entitled "Profile and Playing Chart," is the name of an internationally known professional golfer or a well-known personage accompanied by a short biography or profile. Each of the profiles contains admittedly accurate facts concerning their respective professional careers. Four of these 23 sheets contain the name and profiles of plaintiffs. It is these with which we are concerned.
Plaintiffs have never given their consent to the use of their names and profiles by defendant. As a matter of fact, each of them has requested that the information and his respective name be removed from said game. Defendant has refused to do so.
It is admitted for the purpose of these motions that the use of plaintiffs' names and biographies enhance the marketability of the game and public acceptance thereof. It is also admitted that plaintiffs derive substantial portion of their respective earnings from professional golf and the marketability of their names as professional golfers for endorsement purposes in commercial ventures.
Plaintiffs contend that the use of their respective names reduces their ability to obtain satisfactory commercial affiliation *75 by licensing agreements, and that such use is an invasion of their privacy and an unfair exploitation and commercialization of their names and reputations.
In essence, the issue here is whether defendant, on the statement of facts detailed herein, has violated and continues to violate plaintiffs' rights of privacy.
Such right has been recognized in our State. Vanderbilt v. Mitchell, 72 N.J. Eq. 910, 14 L.R.A., N.S., 304 (E. & A. 1907); Frey v. Dixon, 141 N.J. Eq. 481 (Ch. 1948); Brex v. Smith, 104 N.J. Eq. 386 (Ch. 1929); Edison v. Edison Polyform & Mfg. Co., 73 N.J. Eq. 136 (Ch. 1907); Ettore v. Philco Television Broadcasting Corp., 229 F.2d 481, 58 A.L.R.2d 626 (3 Cir. 1956); Annotation, "Right of Privacy," 138 A.L.R. 22 (1942), supplemented in 168 A.L.R. 446 (1947) and 14 A.L.R.2d 752 (1950).
In 77 C.J.S. Right of Privacy § 1, p. 397, various definitions of the right are set forth. Among these is "[t]he right to be free from the unwarranted appropriation or exploitation of one's personality" (note 3).
Recognition of the right of privacy is comparatively recent. It was unknown to the common law. Reed v. Real Detective Publishing Co., 63 Ariz. 294, 162 P.2d 133 (Sup. Ct. 1945). It was first discussed in an essay published in a law journal in 1860 but it never gained prominence until the article written by former U.S. Supreme Court Justice Brandeis, in collaboration with Frank Warren, was published in 4 Harv. L. Rev. 193 (1890). Melvin v. Reid, 112 Cal. App. 285, 297 P. 91 (D. Ct. App. 1931).
Defendant recognizes the existence of the right of privacy but insists that it has not violated plaintiffs' rights in this regard. It also asserts that plaintiffs have waived their rights of privacy because of their being well-known athletes who have deliberately invited publicity in furtherance of their careers.
Undoubtedly there are limits to the right of privacy. As observed in Edison v. Edison Polyform & Mfg. Co., *76 supra, a man in public life may not claim the same immunity from publicity as a private citizen may. A public figure has been defined as a person who, by his accomplishments, fame or mode of living, or by adopting a profession or calling which gives the public a legitimate interest in his doings, his affairs and his character, has become a public personage. He is, in other words, a celebrity. Prosser on Torts, (3d ed. 1955), § 112, p. 845.
Defendant says that since the information contained in the profiles is readily obtainable public data and available to all, it should not be denied the privilege of reproducing that which is set forth in newspapers, magazine articles and other periodicals. It further says that if there is no violation of the right of privacy to publish this same data and information in such forms of communication, it would seem to be incongruous to hold that it should be restrained from doing same.
Defendant relies on Sidis v. F-R Pub. Corp., 34 F. Supp. 19 (S.D.N.Y. 1938) where it was held that publication of an article concerning the middle-age life of a former infant prodigy was not a violation of plaintiff's right of privacy. The decision was based on the fact that plaintiff's former fame made his life a subject of legitimate public interest and the account was truthful.
It also relies on Gautier v. Pro-Football, Inc., 304 N.Y. 354, 107 N.E.2d 485 (Ct. App. 1952). Here plaintiff, a well-known animal trainer, performed under contract before a large audience between halves of a professional football game. His contract provided that his act would not be televised without the written consent and approval of American Guild of Variety Artists. No consent was ever given. Recovery was denied on the basis that it was televised in connection with the main event, the football game, and no part of the television showing was connected with the commercial. It was held that
*77 "[T]he use of name or picture in a newspaper, magazine, or news-reel, in connection with an item of news or one that is newsworthy, is not a use for purposes of trade within the meaning of the [statute] * * *."
Both Sidis and Gautier were decided under a New York statute making it both a misdemeanor and a tort to make use of a name, portrait or picture of any persons for "advertising purposes or for the purposes of trade without the written consent." N.Y. Sess. Laws 1903, C. 132, § 1-2, amended in 1921 as N.Y. Civil Rights Law, McKinney's Consol. Laws, c. 6, § 50-51.
This statute has limited the extent of the right of privacy that exists in states which do not have such a statute. Prosser, op. cit. § 112, p. 830.
As already adverted to, the law of privacy is of comparatively recent origin. The development as a result of social changes is defined by Professor Prosser as a "complex of four distinct kinds of invasions of four different interests tied together by the common name, but otherwise having almost nothing in common except that each represents an interference with the right of the plaintiff `to be let alone.'" Ibid. § 112, p. 832. He defined each of the four as follows: First, intrusion upon plaintiff's physical solitude or seclusion. Second, giving publicity of a highly objectionable kind with respect to private information about plaintiff, even though the information is true and no action would lie for defamation. Third, publicity which places plaintiff in a false light in the public eye. Fourth, appropriation, for defendant's benefit or advantage, of plaintiff's name or likeness.
The fourth one is the only one that touches the issues in this case.
There is little doubt that a person is entitled to relief when his name has been used without his consent, either to advertise the defendant's product or to enhance the sale of an article.
Some illustrations:
*78 Where defendant sold lockets with removable photographs of plaintiff in each one, it was held that plaintiff-actress could recover for this invasion of her privacy. Lane v. F.W. Woolworth Co., 171 Misc. 66, 11 N.Y.S.2d 199 (S.Ct. 1939), affirmed 256 App. Div. 1065, 12 N.Y.S.2d 352 (App. Div. 1939).
Where defendant inserted pictures of plaintiffs, widely known baseball players, in containers of popcorn and chewing gum, recovery was permitted. Jansen v. Hilo Packing Co., 202 Misc. 900, 118 N.Y.S.2d 162 (S.Ct. 1952), affirmed 282 App. Div. 935, 125 N.Y.S.2d 648 (App. Div. 1952).
Where defendant inserted a picture of a motion picture actress using a certain camera, with an inscription beneath it giving her name, in a manual for the use of such camera, she was permitted a recovery. Selsman v. Universal Photo Books, Inc., 18 A.D.2d 151, 238 N.Y.S.2d 686 (App. Div. 1963).
In the Gautier case the court stated, in addition to what has already been mentioned:
"While one who is a public figure or is presently newsworthy may be the proper subject of news or informative presentation, the privilege does not extend to commercialization of his personality through a form of treatment distinct from the dissemination of news or information."
In Miller v. Madison Square Garden Corp., 176 Misc. 714, 28 N.Y.S.2d 811 (S.Ct. 1941), it was held that an official program of a sporting event, published and sold at the place of the event by the promoter thereof, containing many photographs of contestants and prominent personalities of the sporting world, and numerous unrelated advertisements, was in a class different from a daily newspaper, and the publication of the picture and name of a person not connected with the sporting event was held to constitute a violation of the New York privacy statute. See 168 A.L.R., at p. 83.
*79 It is true that it has been held that the printing of a biography did not give rise to a cause of action, whether in book form (Koussevitzky v. Allen, Towne and Heath, Inc., 188 Misc. 479, 68 N.Y.S.2d 779, (S.Ct. 1947), affirmed, 272 App. Div. 759, 69 N.Y.S.2d 432, (App. Div. 1947), or in newspaper serial form (Jeffries v. New York Evening Journal Publishing Co., 67 Misc. 570, 124 N.Y.S. 780 (S.Ct. 1910); cf. Cason v. Baskin, 155 Fla. 198, 20 So.2d 243, 168 A.L.R. 430 (Sup. Ct. 1947).
It would therefore seem, from a review of the authorities, that although the publication of biographical data of a well-known figure does not per se constitute an invasion of privacy, the use of that same data for the purpose of capitalizing upon the name by using it in connection with a commercial project other than the dissemination of news or articles or biographies does.
The names of plaintiffs have become internationally famous, undoubtedly by reason of talent as well as hard work in perfecting it. This is probably true in the cases of most so-called celebrities, who have attained national or international recognition in a particular field of art, science, business or other extraordinary ability. They may not all desire to capitalize upon their names in the commercial field, beyond or apart from that in which they have reached their known excellence. However, because they presently do not should not be justification for others to do so because of the void. They may desire to do it later.
Perhaps the basic and underlying theory is that a person has the right to enjoy the fruits of his own industry free from unjustified interference. Louis Kamm, Inc. v. Flink, 113 N.J.L. 582, 99 A.L.R. 1 (E. & A. 1934); Sustick v. Slatina, 48 N.J. Super. 134, 143 (App. Div. 1957).
It is unfair that one should be permitted to commercialize or exploit or capitalize upon another's name, reputation or accomplishments merely because the owner's accomplishments have been highly publicized.
*80 The argument by defendant that it is not invading plaintiffs' rights of privacy because it does not advertise their names on the lid of the box, and because the purchaser does not know who the "23 famous golfers" are until he purchases and sees the contents, is not tenable. For the reasons already expressed, I find that plaintiffs' rights are violated notwithstanding. This is especially true in view of the admissions made for the purpose of these motions.
Judgment will be entered for plaintiffs and injunction will issue.