**HILLERICH & BRADSBY CO., Plaintiff,**

v.

**CHRISTIAN BROTHERS, INC., Defendant.**

**Civil No. 6–96–308.**

United States District Court, D. Minnesota, Sixth Division.

Nov. 5, 1996.

Marko Joseph Mrkonich, Michael E. Keyes, Oppenheimer Wolff & Donnelly, Minneapolis, MN, for plaintiff.

Peter McCreery Lancaster, David Norman Fronek, Joshua J. Burke, Dorsey & Whitney, Minneapolis, MN, for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

TUNHEIM, District Judge.

Plaintiff Hillerich & Bradsby Co. ("H & B") has an exclusive Endorsement and License Agreement with the celebrity hockey player Mark Messier for the use of his name on hockey equipment. Defendant Christian Brothers, Inc. admits to placing Messier's name on certain hockey stick blades, claiming it does so merely for purpose of informing customers that the blades are of the same shape as those used by Messier. H & B brings this suit against Christian Brothers alleging claims for unfair trade practices under § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1); misappropriation of publicity rights; deceptive trade practices under Minn.Stat. § 325D.44; interference with economic advantage; and unjust enrichment.

The matter is before the Court on plaintiff's motion for a preliminary injunction. For the reasons set forth below, the Court grants a preliminary injunction ordering the defendant to cease using Messier's name on any hockey equipment.

### FACTS

H & B manufactures, distributes, promotes and sells hockey equipment and hockey related products throughout the world. It utilizes endorsements of its products from major league hockey players to increase the sales of its products. H & B alleges that such endorsements are most effective when they are exclusive and when they are obtained from highly regarded celebrity athletes.

Mark Messier is one of professional hockey's most recognized players, having twice been voted the most valuable player in the National Hockey League. He has led the Edmonton Oilers and the New York Rangers to a total of six Stanley Cup championships. He is on the cover of the October 7, 1996 issue of *Sports Illustrated,* together with his teammate Wayne Gretzky. The value of his endorsement is further enhanced by the fact that he plays for the New York Rangers, placing him in one of the world's largest media markets.

Messier established Messier Management International, Inc. partly for the purpose of managing his name for purposes of endorsement. In 1994, Mark Messier, Messier Management International, and H & B entered into an exclusive Endorsement and License Agreement for a two-year period, which was renewed on August 20, 1996. The Agreement provides H & B "the sole and exclusive right and license to use the Endorsement on, and in connection with the manufacture, distribution, advertisement, promotion, marketing and sale of Hockey Equipment." It prohibits Messier from permitting the use of his endorsement in the "manufacture, distribution, promotion, marketing, advertising or sale of Hockey Equipment manufactured, distributed, or sold by any Person other than H & B."

The Agreement gives H & B the right to institute legal action in its own name against any person who uses the endorsement or Messier's name in contravention of H & B's rights under the agreement. Hockey Equipment is defined to include "any and all Hockey sticks, stick shafts, [and] stick blades." Messier also has an obligation to act in an advisory role to H & B, consult with its engineers and designers, act as a spokesperson for H & B, and play with H & B's equipment. H & B alleges it has expended significant time and money developing, promoting, and marketing its products with Messier's name.

In August 1996, H & B became aware that Christian Brothers was selling its Pro–Rite hockey blades with the name "Messier" clearly affixed on the blade and UPC label without permission from H & B, Messier, or Messier Management. H & B sent a letter to Christian Brothers informing it of the

exclusive Agreement and demanding that defendant cease and desist from using Messier's name on the hockey blades. Christian Brothers responded with a letter on September 10, 1996, admitting the use of the name and refusing to cease from doing so. The letter sets forth the position that the use of the name merely identifies the particular pattern which the blade embodies, rather than suggesting an endorsement of the brand. The letter asserts that such blade pattern identification is customary in the hockey stick business and that the consuming public understands this usage.

Defendant's response to the motion before the Court develops the same theme. Defendant argues that it is a fair use of the name "Messier" to affix it to a hockey stick as a descriptive term for the curve of the blade. It submits an affidavit stating that this is customary in the industry, and it argues that plaintiff is not entitled to any relief because plaintiff engages in the same practice. Defendant submitted an H & B hockey stick stamped with the name of "Plante," who is a professional hockey player not under contract with H & B. Defendant found this stick in the first sporting goods store in which it searched for evidence that plaintiff participates in the practice it now seeks to enjoin.

Plaintiff denies that it regularly uses the names of professional hockey players on its equipment unless it has a contract with the athlete to do so, although it admits that certain custom ordered equipment has been stamped with names in contravention of this policy. Plaintiff also submits the affidavits of Bruce Newton, Director of Marketing of Karhu USA, Inc. and John Collins, Vice President of Sales and Marketing of Bauer, Inc. Both aver that it is not standard practice for their own companies or other equipment manufacturers to sell hockey sticks or blades with NHL players' names on them without having those players under contract. Furthermore, plaintiff submitted one of its Messier sticks and one of defendant's sticks stamped with Messier's name. A comparison of these sticks reveals that their blades are not the same shape.

## ANALYSIS

H & B moves the Court for preliminary relief on Counts One, Two, and Three of its Complaint. Count One is a federal claim for deceptive trade practices claim under § 43 of the Lanham Act. Count Two is a claim under Minnesota law for the tort of misappropriation of publicity rights. Count Three is a state law claim under the Minnesota Deceptive Trade Practices Act. To obtain preliminary injunctive relief, H & B must show: (1) a probability of success on the merits; (2) a threat of irreparable harm to 3M; (3) that the balance of hardships favors 3M; and (4) that granting preliminary relief favors the public interest. *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981). The plaintiff bears the burden of proof on the four factors. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir.1987).

### A. Probability of Success on the Merits

Plaintiff is likely to succeed on the merits of its claims for relief based on the Minnesota Deceptive Trade Practices Act and the Lanham Act. Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1):

> Any person who, on or in connection with any goods ... uses in commerce any word, term, [or] name ... which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods ... by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To obtain injunctive relief on such a claim, the plaintiff must prove two elements. First, plaintiff must prove what factual message or claim is conveyed to the ordinary consumer; second, plaintiff must prove the message is likely to mislead the ordinary consumer. 3 McCarthy, *Trademarks and Unfair Competition* § 27.07[2][a] and [d]. "To obtain an injunction under § 43(a), [plaintiffs] need only show that the falsities complained of had a tendency to deceive.... A finding of tendency to deceive satisfies the requisite of

irreparable harm." *Black Hills Jewelry Mfg. v. Gold Rush, Inc.,* 633 F.2d 746 (8th Cir.1980). It is not required that the plaintiff show intent to deceive or actual deception.

■ The Minnesota's Deceptive Trade Practices Act as applicable to defendant's conduct makes it a deceptive trade practice for one, in the course of business, to:

(2) [cause] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) [cause] likelihood of confusion or of misunderstanding as to the affiliation, connection, or association with, or certification by, another; ...

(5) [represent] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; ... or

(8) [disparage] the goods, services or business of another by false or misleading representation of fact....

Minn.Stat. § 325D.44. A person likely to be damaged by a deceptive trade practice of another may be granted an injunction. Minn.Stat. § 325D.45, subd. 1. Proof of intent to deceive is not required. *Id.* In the context of trademark infringement, the Minnesota Deceptive Trade Practices Act creates claims that mirror those under the Lanham Act. *Woodroast Sys. v. Restaurants Unlimited,* 793 F.Supp. 906, 918 (D.Minn.1992).

The Court finds that plaintiff has demonstrated a likelihood of success on the merits of its deceptive trade practices claims. The Court finds that the affidavits and written evidence establish that plaintiff has an exclusive contract with Mark Messier for use of his name on hockey equipment. There is no dispute about the factual message made to defendant's consumers: defendant admits it uses the name "Messier" on some of its hockey sticks.

■ Plaintiff has shown it is likely to succeed in proving the false or misleading nature of this use of Messier's name. The Court finds that consumers are likely to come to the wrong conclusion that Mark Messier has endorsed defendant's sticks, or that he has some connection with them.

The primary defense to plaintiff's claims is the doctrine of fair use. This defense applies "only when the allegedly infringing term is used not as a trademark but 'fairly and in good faith only to describe to users the goods and services of [a] party, or their geographic origin.'" *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178 (5th Cir.1980). Defendant maintains that it has only used the name "Messier" to describe the shape of the blade. There is no dispute that defendant has a right to copy the shape of Messier's blade, although the evidence that the parties' blades are not the same contradicts defendant's assertion that it has in fact done so.

Defendant is correct in its assertion that the fact that Messier uses a blade of a certain shape is public knowledge. Defendant could advertise that it makes a hockey stick with a blade that matches the shape of those used by Messier, just as a perfume maker can advertise that its product smells like that of Chanel. *Smith v. Chanel, Inc.,* 402 F.2d 562 (9th Cir.1968). Yet this case did not allow a competitor to simply place Chanel's mark on its product. Similarly, it does not stand for the proposition that defendant can place the name "Messier" on its product. Advertising similarity to a competitor's product does not cause confusion as to sponsorship or endorsement of goods; misappropriation of a mark causes such confusion.

Defendant misplaces reliance on the decision in *New Kids on the Block v. New America Pub. Inc.,* 971 F.2d 302 (9th Cir.1992). This case explains the nominative use of trademarked names. It allows a newspaper to refer to a musical group by name in a popularity poll which can provide the newspaper revenue through a fee consumers pay for participating in the poll. There is no other way to refer to a particular musical group except by name, and this does not create confusion as to sponsorship or endorsement of a newspaper or its poll.

In contrast, defendant could refer to a shape of a hockey blade without the use of Messier's name. Indeed, it has admitted that other hockey players use the same blade shape. Their names, or any fanciful name, could be used instead. Because defendant's fair use defense is unlikely to succeed, plaintiff's claims under the Lanham Act and the ·Minnesota Deceptive Trade Practices Act are likely to succeed.

■ Plaintiff is also likely to succeed on the merits of its claim for misappropriation of publicity rights. Although the Minnesota state courts have not explicitly recognized (or rejected) this cause of action, the federal courts in this circuit and district have concluded that it exists in Minnesota. *Ventura v. Titan Sports,* 65 F.3d 725 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1268, 134 L.Ed.2d 215 (1996); *McFarland v. E & K Corp.,* 18 U.S.P.Q.2d 1246 1991 WL 13728 (D.Minn.1991); *Uhlaender v. Henricksen,* 316 F.Supp. 1277 (D.Minn.1970).

Courts have distinguished between a newspapers' use of professional athletes names and facts pertaining to their play and use of such information for commercial purposes. The former is a fair use, the latter infringes on players' right of publicity.

> [A]lthough the publication of biographical data of a well-known figure does not per se constitute an invasion of privacy, the use of that same data for the purpose of capitalizing upon the name by using it in connection with a commercial project other than the dissemination of news or articles or biographies does.

*Uhlaender v. Henricksen,* 316 F.Supp. at 1282 (quoting *Arnold Palmer, et al. v. Schonhorn Enterprises, Inc.,* 96 N.J.Super. 72, 232 A.2d 458 (1967)). Thus, makers of parlor games cannot without authorization use the names and facts concerning the play of professional athletes in their commercial products. *Id.*

The case at bar is similar. Defendant claims ·that the fact that Messier uses a certain blade shape is a matter of public knowledge. This is true, and newspapers are free to disseminate this information. Yet this fact cannot be used to sell a commercial product without permission of a celebrity.

■ Defendant argues that plaintiff is not likely to succeed because it is a standard practice in the industry, well known to consumers and participated in by plaintiff, to use names of athletes without authorization on its hockey sticks to identify blade patterns. This factual assertion also surfaces as an unclean hands challenge to the request for equitable relief.

The facts in this area are disputed, and the factfinder at trial may be persuaded that defendant is right. Nonetheless, the evidence currently before the Court demonstrates that plaintiff is likely to succeed on this issue. In particular, the affidavits of Bruce Newton and John Collins are persuasive on this point, because they are not interested in the outcome of this particular case.

As for the plaintiff's use of the name "Plante," the Court finds plaintiff's explanation credible and rejects the unclean hands argument. The name "Plante" looks like it was stamped on to the stick in evidence, because the style of the lettering does not match any other lettering on the stick. In sharp contrast, plaintiff's "Messier" sticks have the lettering of that name in a style that matches other lettering on the stick. This evidence supports plaintiff's assertion that the "Plante" name was merely placed on a few custom ordered sticks.

## B. Irreparable Harm

■ H & B alleges that there will be irreparable harm to its business if defendant is allowed to continue selling its products with the name Messier affixed. In trademark cases, courts may presume irreparable harm when a likelihood of confusion is demonstrated. *Calvin Klein Cosmetics v. Lenox Laboratories,* 815 F.2d 500, 505 (8th Cir. 1987); *General Mills, Inc. v. Kellogg Co.,* 824 F.2d· 622 (8th Cir.1987) (irreparable injury presumed once moving party demonstrates probable success in proving likelihood of confusion). In evaluating the threat of irreparable harm, courts may also consider the potential ·loss of control over the quality of plaintiff's product and the risk of damage to a plaintiff's reputation and trademark from the continued use of an infringing mark.

*Woodroast,* 793 F.Supp. at 918. H & B has shown it is entitled to application of the presumption of irreparable harm in a likelihood of confusion and potential damage to goodwill and reputation.

### C. Balance of the Harms

■ This factor requires the Court to consider any harm to the defendant from granting a preliminary injunction and to balance it with the harm to plaintiff if it is denied preliminary relief, but is successful on the merits. On balance, the harm from denying preliminary relief would be greater to H & B if it succeeded on the merits than any harm to defendants if a preliminary injunction is found to have been improperly granted. The potential harm to H & B includes intangible effects such as loss of goodwill and injury to reputation which may not be remedied by money damages. If the preliminary injunction is found to have been improperly granted, the damage suffered by Christian Brothers will be quantifiable in terms of lost sales and the damages will be recoverable from H & B. *See, e.g., Ford Motor Co. v. Cook,* 25 U.S.P.Q.2d 1050, 1055 1992 WL 220614 (N.D.Ill.1992) (balance of harms favors plaintiff where only potential harm to defendants is financial injury, but plaintiff has shown potential for irreparable harm).

The Court rejects defendant's argument that a recall of its products is an undue burden. Plaintiff attempted to resolve this matter without resorting to litigation; defendant cannot now claim that its relationship with its customers will be disrupted unduly by an injunction protecting the rights about which defendant was warned.

### D. The Public Interest

■ The last factor the Court considers is the public interest. The Court may consider the interest in protecting the public from confusion or deception with the interest in a competitive marketplace. *Aveda Corp. v. Evita Marketing, Inc.,* 706 F.Supp. 1419, 1432 (D.Minn.1989). Where the moving party has demonstrated that misrepresentations are being made in the marketplace, the public interest favors injunctive relief. *Id.* In this case, the public would be harmed if products which are not endorsed by Messier bear his name prior to a decision on the merits in this case.

### ORDER

Based on the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that plaintiff's motion for a preliminary injunction [Docket No. 2] is **GRANTED**, as follows:

1. Defendant Christian Brothers, Inc., its affiliates, and subsidiaries, are enjoined from using the name "Messier" in any form on hockey sticks, blades or other equipment without the express permission of plaintiff;

2. Defendant Christian Brothers, Inc., its affiliates, and subsidiaries, are directed to cease and desist from the manufacture, sale, distribution, offering for sale, shipment, advertising and other promotion of all hockey sticks, blades and any other hockey equipment or product bearing or otherwise utilizing the "Messier" name;

3. Defendant Christian Brothers, Inc., its affiliates, and subsidiaries, are directed to cease and desist from the use or dissemination in any catalogs, order, advertising and other material any reference to the "Messier" name;

4. Defendant Christian Brothers, Inc., its affiliates, and subsidiaries are directed to recall and deliver up for destruction all hockey sticks, blades and other hockey equipment and products bearing or otherwise utilizing the "Messier" name sold and any remaining inventory;

5. Defendant Christian Brothers, Inc., its affiliates, and subsidiaries are directed to refrain from any further use of any price lists, catalogs and other promotion containing any reference to the "Messier" name in connection with hockey equipment or products; and

6. Plaintiff shall post bond of $25,000.00 for the payment of such costs and damages as may be incurred or suffered by any party

who is found to have been wrongfully restrained.